In the Interest of D.A.W., G.P.W.–W., and M.M.W., Minor Children,

H.W., Mother, Appellant,.

G.W., Father, Appellant.

No. 95–2193.

Court of Appeals of Iowa.

June 27, 1996.

Paul D. Miller of Zimmermann & Miller, Iowa City, for appellant mother.

Mark C. Meyer of Kinnamon, Kinnamon, Russo & Meyer, Cedar Rapids, for appellant father.

Douglas V. Olson, Coralville, for appellees minor children.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

Considered by SACKETT, C.J., and HABHAB and STREIT, JJ.

SACKETT, Chief Judge.

Heather and Gary, the parents of three children, separately appeal from an order terminating their parental rights. Heather contends the hearing did not meet due pro-

cess because the juvenile court took judicial notice of the children's child in need of assistance files. She also contends, even though the statutory requirements for termination were met, the court should not have terminated her parental rights because with further assistance she can be an adequate parent. Gary contends there is not clear and convincing evidence the children cannot be returned to him. He also contends the court erred in admitting certain exhibits. We affirm.

The three children are Desiree, born February 18, 1990, Gary Jr., born June 25, 1991, and Moriah, born June 29, 1992. The family first came to the attention of the Iowa Department of Human Services in early 1991. From then to April 1994, various services were offered to the family, including help in locating housing, social work, counseling, homemaking services, and nursing services. During this time the family experienced at least two stays at an emergency housing facility and Heather had at least two stays at a domestic violence shelter. The family was not able to maintain a home.

In August 1993, after an investigation, the Department of Human Services decided there was a basis for a report Heather denied her son, Gary Jr., then two years of age, critical care because Gary Jr. was playing in a busy street at about 8 a.m. unattended by an adult. At the time, Gary and Heather were separated. A petition to have Gary Jr. found a child in need of assistance was filed. The court withheld disposition based on Heather's agreement to receive services from the department. The action was dismissed in November 1993 with the understanding Heather would continue to receive services.

In January 1994, Heather, with help, obtained HUD assisted housing. Gary was incarcerated on a drug tax stamp conviction. In March 1994, Heather's landlord contacted the Department of Human Services complaining about Heather's housekeeping. Heather wanted to place the children in foster care, but was persuaded to attempt to keep her family together. Family preservation services were offered. Heather was then living with a man other than Gary. A no contact order was entered against this man because there were allegations he had assaulted Desiree. Heather asked that the no contact order be lifted so she could see him.

On April 6, 1994, Heather voluntarily placed the children in foster care. Gary was again incarcerated, this time for probation revocation proceedings. The children were found to be children in need of assistance on May 19, 1994. Their placement in foster care was continued by an order filed May 30, 1994.

Heather sporadically visited the children until April 1995 when she and Gary reunited. Gary's visits were terminated in October 1994 because of allegations he had an explosive temper and had emotionally abused the children. He did not follow through on conditions of reestablishing visitation until January 1995.

Petitions to terminate parental rights pursuant to Iowa Code section 232.116(1)(e) (1995) (child four years of age or more, previously adjudicated in need of assistance, out of parental custody for twelve months and cannot now be returned) and section 232.116(1)(g) (child three years or younger, previously adjudicated in need of assistance, out of parental custody for six months and cannot now be returned) were filed on April 7, 1995. After April 1995, more services were offered to Gary and Heather. Their inability to maintain an address continued. Service providers assert neither can adequately care for their children. After a hearing, the court terminated their parental rights. This appeal follows.

■ We review de novo. *In re A.Y.H.*, 508 N.W.2d 92, 94 (Iowa App.1993). We must determine whether the state has met its burden of presenting clear and convincing evidence in support of termination. *See In re T.A.L.*, 505 N.W.2d 480 (Iowa 1993).

Heather first contends the trial court should not have admitted into evidence copies of the child in need of assistance files. Gary makes a similar challenge. We first address both parents' challenges to the consideration by the juvenile court of certain records from earlier proceedings.

We recognize the parents' right to due process and a fair trial. In *In re R.B.*, 493 N.W.2d 897 (Iowa App.1992), we said:

A mother's or father's interest in maintaining the integrity of his or her family unit is protected by the Due Process Clause of the United States and the Iowa constitutions. *Alsager v. District Court of Polk County*, 406 F.Supp. 10, 22 (S.D.Iowa 1975). State intervention to terminate a parent-child relationship must be accomplished by meeting the requisites of the Due Process Clause. *See Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 606 (1982). Due process requires fundamental fairness in a judicial proceeding. *See Lassiter v. Department of Social Servs.*, 452 U.S. 18, 25, 101 S.Ct. 2153, 2158, 68 L.Ed.2d 640, 648 (1981). A parent's right to have custody of his or her child should be terminated only with the utilization of the required constitutional safeguards. *See Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042, 1045 (1923); *In re T.R.*, 460 N.W.2d 873, 875 (Iowa App.1990).

*R.B.*, 493 N.W.2d at 898.

It is permissible for a trial court in a subsection 232.114(5) termination proceeding to judicially notice the prior child in need of assistance case, including the evidence, providing certain safeguards are followed. *In re Adkins*, 298 N.W.2d 273, 277–78 (Iowa 1980). Papers requested to be noticed must be marked, identified, and made a part of the record. *Id.* at 278. Testimony must be transcribed, properly certified, marked, and made a part of the record. *Id.* The trial court's ruling in the termination proceeding should state and describe what it is the court is judicially noticing. *Id.*

We agree with the parents these safeguards may not have been technically followed in some instances in this case. The State advances this is because Gary did not properly preserve error on his challenges. We agree.

In addressing Heather's challenge, we find the issue she raises is moot in large part by her admissions and allegations that the State has met its burden of proof as to the first three elements necessary to terminate (namely age, prior finding the child was a child in need of assistance, and custody with the department for the required length of time with each child), and her further contention in her brief there is no dispute that grounds still exist to find the children are children in need of assistance.

■ We review de novo. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Therefore, we only consider those parts of the record we find were properly considered by the trial court. We consider only those objections to evidence properly raised in the juvenile court. The parents have failed to show grounds for reversal on this issue.

■ Heather next contends that with more time she could care for her children. A termination hearing involves the weighty issue of whether a court should sever biological ties. The issue of whether or not to legally sever the biological ties between parent and child is an issue of grave importance with serious repercussions to the child as well as the biological parents. *See R.B.*, 493 N.W.2d at 899. The goal of a child in need of assistance proceeding is to improve parenting skills and maintain the parent-child relationship. When the State seeks termination, it is because the State has been unable to furnish the help necessary to correct the parent's deficiencies. An underlying issue in a termination action is whether the parent is beyond help. But a parent does not have an unlimited amount of time in which to correct his or her deficiencies. *See In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990).

■ Heather advances no valid reasons other than that she is not beyond help in seeking an extension of these proceedings. She has had considerable help and a full range of services. She advances no plan to reunite her with her children nor does she suggest what specifically can be done. We recognize the children have bonded with their mother. Their age and problems are such that they may not readily be adoptable. We cannot predict their future. There is a possibility their interests might be better served by further attempts to save their biological relationship. The legislature has statutorily provided for termination. The

State has met each of the necessary requirements for termination. The State and the guardian ad litem, who also urges termination, have a continuing obligation to assist these children in finding a secure environment. We affirm the juvenile court's decision terminating Heather's parental rights.

■ Gary contends there is not clear and convincing evidence supporting the petition to terminate his parental rights. We disagree. He continues to abuse substances. He has been abusive to his wife and children. He has not been faithful to suggested programs. He has not cooperated with service providers. He has made few attempts to do affirmative things for the children. The State and the guardian ad litem advance that he has instead sought excuses for his behavior. We affirm the juvenile court order terminating his parental rights.

**AFFIRMED.**